# IN THE UNITED STATES DISTRICTCOURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JACK A. BEASLEY, #B-02622, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 cv 1196 |
| | ) | |
| GUY PIERCE, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff filed this civil rights lawsuit on May 26, 2011, pursuant to 42 U.S.C. § 1983. He claims that Dr. Tilden, Dr. Taller, while working as healthcare professionals at the Pontiac Correctional Center ("Pontiac"), and Mark Allen, James Blackard, Michael Lemke, Marvin Reed, Guy Pierce, Theresa Arroyro, Patrick Hastings, Sharon Simpson, Amy Melvin and Gladyse Taylor, as former and current employees at "Pontiac", were deliberately indifferent to his serious medical needs.

Defendants Tilden and Taller have filed separate Motions for Summary Judgment. Defendants Mark Allen, James Blackard, Michael Lemke, Marvin Reed, Guy Pierce, Theresa Arroyro, Patrick Hastings, Sharon Simpson, Amy Melvin and Gladyse Taylor, have joined in one Motion for Summary Judgment. The Court will rule on the Motions in one order, as many of the facts are similar.

Plaintiff alleges that Dr. Tilden was deliberately indifferent because he failed to (1) send Plaintiff to a specialist, (2) issue new leg sleeves, and (3) adequately treat superficial sores that developed on Plaintiff's right stump.

Plaintiff alleges that Dr. Taller was deliberately indifferent because Dr. Taller failed to prescribe him appropriate shoes, leg sleeves, and leg socks, and failed to adequately treat superficial sores that developed on his stump.

Plaintiff alleges that Mark Allen, James Blackard, Michael Lemke, Marvin Reed, Guy Pierce, Theresa Arroyro, Patrick Hastings, Sharon Simpson, Amy Melvin and Gladyse Taylor were deliberately indifferent to his serious medical needs, by preventing him from obtaining proper shoes while incarcerated at Pontiac Correctional Center.

All Defendants move for summary judgment on the grounds that they were not deliberately indifferent to Plaintiff's serious medical needs.  Additionally, Defendants Pierce and Taylor seek summary judgment on the grounds that they lack the requisite personal involvement for liability, and Defendants Allen, Blackard, Lemke, Reed, Pierce, Arroyro, Hastings, Simpson, Melvin and Taylor seek summary judgment on the grounds of qualified immunity.   This Order follows.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552 (1986).  The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case."  *Id*. at 2553.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial.  *Celotex Corp.,* 106 S.Ct. at 2553.  This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party.  *Anderson*, 106 S.Ct. at 2511; *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir. 1995).

## FACTS

Plaintiff, Jack Beasley, was incarcerated at Pontiac Correctional Center from February 10, 2010, through January 19, 2011. Plaintiff is currently a parolee of the Illinois Department of Corrections ("IDOC"). On May 26, 2011, while incarcerated at Pinckneyville Correctional Center, Plaintiff filed this § 1983 civil rights lawsuit naming multiple defendants.  Guy Pierce was the Warden of Pontiac Correctional Center during the relevant times of the complaint.  Dr. Tilden and Dr. Taller were health care professionals at Pontiac Correctional Center. Michael Lemke was the Assistant Warden of Operations at Pontiac Correctional Center during the relevant times of the complaint. Marvin Reed was the Assistant Warden of Programs at Pontiac Correctional Center during the relevant times of the complaint. James Blackard was a Major at Pontiac Correctional Center during the relevant times of the complaint.  Mark Allen was the Commissary Manager at Pontiac Correctional Center during the relevant times of the complaint.

Gladyse Taylor was the Acting Director of the Illinois Department of Corrections during the relevant times of the complaint. Theresa Arroyo was the Health Care Unit Administrator during certain periods of time of the complaint. Defendant Patrick Hastings was a grievance officer at Pontiac during the relevant time of the complaint. Sharon Simpson was a grievance officer at Pontiac during the relevant time of the complaint. Plaintiff alleges Amy Melvin was responsible for medical records at Pontiac Correctional Center.

Plaintiff is a below the knee amputee and has a prosthetic leg. On February 10, 2010, upon Plaintiff's arrival at Pontiac Correctional Center, Plaintiff possessed two brand new leg socks as well as two previously used leg socks.

On February 24, 2010, Plaintiff's leg was evaluated by a nurse within the Health Care Unit, and it was noted that Plaintiff's stump was clean. Plaintiff was referred to Dr. Taller for further evaluation. On March 23, 2010, Dr. Taller referred Plaintiff to Hangar Prosthetics & Orthotics, in Urbana, for prosthetic evaluation and adjustment. Rick Warren, a practitioner at Hanger evaluated the Plaintiff's prosthetic needs. On May 19, 2010, Dr. Taller approved Rick Warren's recommendations for new liners, new socks and a future sock adjustment.

Plaintiff desired to purchase new shoes from outside of the prison. Dr. Tilden did not have authority to approve new shoes to be brought in from outside of the prison. This required approval from prison security. Pontiac is a maximum security prison within the Illinois Department of Corrections and places limits on the types and amount of personal property permitted for safety and security concerns. Offenders are not permitted to possess more than one pair of shoes for safety and security concerns. The concern with an offender possessing multiple pairs of shoes is that an additional pair could be used as currency to trade and traffic within the institution.

Plaintiff had access to low cost rubber soled tennis shoes within the inmate commissary at Pontiac Correctional Center. Plaintiff admits he was provided new shoes from the commissary at Pontiac Correctional Center, but desired different shoes.

Defendant Reed recalls Plaintiff requesting permission to purchase new shoes from an outside vendor or have new shoes sent into the facility. This request was denied for safety and security concerns. However, Offender Beasley was approved by Defendant Reed to purchase new tennis shoes from the commissary connected to the medium security unit at Pontiac Correctional Center. Hangar Prosthetics indicated there was no specific shoe required for Plaintiff's prosthetic leg, as long as the prosthesis was fitted to the shoes.

On October 7, 2010, Plaintiff issued a correspondence to Defendant Allen indicating he possessed the funds necessary to purchase the new shoes from the medium security unit. On November 4, 2010, the Plaintiff's new shoes arrived, and he was issued a shakedown slip. A size 11 shoe was received and signed for by Plaintiff.

An appointment was scheduled with Hangar Prosthetics in Peoria, Illinois to fit Plaintiff's new shoes to the prosthesis. Plaintiff refused to attend the appointment at Hangar Prosthetics in Peoria, Illinois because he desired to go to Hangar Prosthetics in Champaign, Illinois. Any delay in fitting the shoe to the prosthesis was caused by Plaintiff's refusal to go on the scheduled medical furloughs to Hanger Prosthetics in Peoria, Illinois.

Plaintiff was seen continuously within the Health Care Unit. On December 23, 2010, Dr. Tilden examined the Plaintiff's leg and evaluated his prosthetic needs. Plaintiff made no complaints on that day, other than sores that had developed on his right stump, which are a known consequence of having a prosthetic leg. Further, Plaintiff was provided triple antibiotic ointment for those sores.

## ANALYSIS

**DELIBERATE INDIFFERENCE**

Dr.Tilden and Dr. Taller's actions do not rise to a constitutional violation. "Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as a defendant is deliberately indifferent to the prisoner's health. That is, only if he 'knows of and disregards an excessive risk to inmate health or safety.' " *Sellers v Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (quoting Farmer v Brennan, 511 U.S. 825 (1994). Inmates are entitled to "adequate medical care." *Boyce v Moore*, 314 F. 3d 884, 888-89 (7th Cir. 1997). A prisoner is entitled only to reasonable measures to meet a substantial risk of serious harm—not to demand specific care or to receive the best care possible. *Forbes v Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In the instant case, Plaintiff admits that he got sores intermittently throughout the time he has had his prosthetic leg. These sores are a known consequence of having a prosthetic leg. As such, the Plaintiff's sores are not a serious medical condition within the sense of the term. In any event, the Plaintiff cannot establish the subjective prong of the deliberate indifference test, that is whether Doctors Tilden and Taller acted with deliberate indifference. Upon arrival at Pontiac his prosthetic needs were promptly evaluated by health care professionals. He was referred to Dr. Taller for further evaluation. On March 23, 2010, he was referred to Hanger Prosthetics for evaluation and adjustment. Dr. Taller subsequently approved the recommendations for new prosthetic liners, socks and a future socket adjustment. During Plaintiff's 11-month incarceration at Pontiac, Dr. Taller evaluated his prosthetic needs 10 to 15 times. Plaintiff's chief complaint against Dr. Taller is that he wanted shoes from outside the prison. Dr. Taller did not have authority to approve shoes from outside the prison. Despite this, Dr. Taller made multiple telephone calls to Hanger Prosthetics in an effort to determine if Plaintiff could utilize other shoes, including prison shoes. In response, Dr. Taller was informed that shoes from within the prison would work. In fact, the Plaintiff did end up with shoes from the commissary.

It is clear that Dr. Taller was aware of the Plaintiff's medical needs and that he treated them in a reasonably appropriate manner. He is therefore entitled to summary judgment on Plaintiff's deliberate indifference claim.

Dr. Tilden treated the Plaintiff's sores with triple antibiotic cream and antifungal cream and requested that Plaintiff receive new leg sleeves that were previously put in storage. Treating uninfected, superficial sores with triple antibiotic ointment and antifungal cream is a reasonable and proper treatment option under current medical standards. Furthermore, Plaintiff's claims that he was not referred to a specialist lacks merit. In addition to the referrals to Hanger Prosthetics in March and May 2010, an Offender Outpatient Progress Note dated January 13, 2011, establishes that Plaintiff was in fact scheduled for an appointment at Hanger Prosthetics for January 20, 2011. Plaintiff was transferred to another facility on January 19, 2011, before his appointment. It is clear that Dr. Tilden was aware of the Plaintiff's medical needs and that he treated them in a reasonably appropriate manner. He is therefore entitled to summary judgment on Plaintiff's deliberate indifference claim.

Having found that the correctional facility medical professionals treated the Plaintiff in a reasonably appropriate matter as to his claims of deliberate indifference, the finding would necessarily apply to the remaining Defendants as well. Defendants Allen, Blackard, Lemke, Reed, Pierce and Taylor were not the Plaintiff's treating physicians. Plaintiff has never met or spoke to Defendants Arroyo or Hastings. Plaintiff filed suit against Pierce and Taylor due to their advisory positions. Plaintiff filed suit against Hastings and Simpson because they were grievance officers and filed suit against Defendant Melvin for allegedly mishandling medical records.

In order to state a cognizable claim against a prison official, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v Gamble*, 429 U.S 97, 106 (1976). The Plaintiff is unable to do so under these facts, and these Defendants are also entitled to summary judgment.

**DEFENDANTS PIERCE AND TAYLOR LACK PERSONAL INVOLVEMENT TO BE LIABLE UNDER 42 U.S.C. §1983.**

Defendant's Pierce and Taylor also request summary judgment because the lack personal involvement as required for them to be held liable. Although the court granted summary judgment on the issue of deliberate indifference it would grant summary judgment on this issue as well.

Defendants in a suit brought pursuant to 42 U.S.C. § 1983 can only be held liable for their individual wrongdoing. *Duckworth v Franzen*, 780 F. 2d 645, 650 (7th Cir. 1985). In the instant matter, Plaintiff admits that he brought suit against Defendants Taylor and Pierce, not for their personal actions, but because of their supervisory positions within the Illinois Department of Corrections. Since an action brought pursuant to 42 U.S.C. §1983 requires individual

5

wrongdoing, Defendants Pierce and Taylor are entitled to summary judgment for this additional reason.

### QUALIFIED IMMUNITY

Defendant's Allen, Blackard, Lemke, Reed, Pierce, Arroyro, Hastings, Simpson, Melvin and Taylor are also granted summary judgment on the basis of Qualified Immunity. Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982).

The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Saucier v Katz*, 533 U.S. 194, 202 (2001). This inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition" and must be "particularized" based on the facts confronting the officer. *Brosseau v. Haugen*, 543 U.S. 194 (2004). Implicit in the qualified immunity analysis is the requirement that the violation must have been intentional or the result of some gross misfeasance or nonfeasance on the part of the governmental officer arising to the level of incompetence. *Anderson v Creighton*, 483 U.S. 635 (1987).

In the instant matter the record clearly shows that the Plaintiff was being tended to and thus there has been no showing that these Defendants could be liable under a theory of deliberate indifference. Having failed to demonstrate the violation of a clearly established statutory or constitutional right, summary judgment in favor of Defendants would be appropriate on this alternative basis, as well.

**IT IS THEREFORE ORDERED:**

**1)  Defendant Taller's Motion for Summary Judgment [85] is GRANTED, Defendant Tilden's Motion for Summary Judgment [87] is GRANTED, and the Motion for Summary Judgment by Defendants Allen, Arroyo, Blackare, Hastings, Lemke, Melvin, Pierce, Reed, Simpson, and Taylor [109] is GRANTED. Plaintiff's Motions in Opposition to the Motions for Summary Judgment [95, 112] are DENIED. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

3) **If Plaintiff wishes to proceed in forma pauperis on appeal, his motion for leave to appeal in forma pauperis must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v. Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith.");** *Walker v. O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 11th day of March, 2014.

/s/ James E. Shadid
James E. Shadid
Chief United States District Judge